IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JACQUELINE RIOS,                          :
    Plaintiff,                            :
                                       :
    v.                                    :          CIVIL ACTION NO. 24-CV-5235
                                         :
BERKS COUNTY CHILDREN                      :
& YOUTH SERVICES, *et al.*,                :
    Defendants.                           :

**MEMORANDUM**

SCHMEHL, J. /s/ JLS                                  OCTOBER  24, 2024

Plaintiff Jacqueline Rios initiated this *pro se* civil action alleging her rights were violated in a state child dependency matter.  Named as Defendants are Berks County Children & Youth Services ("CYS") and Rebecca Mill.  Rios seeks to proceed *in forma pauperis*.  For the following reasons, the Court will grant Rios leave to proceed *in forma pauperis* and dismiss her Complaint.  She will be given an opportunity to file an amended complaint if she can correct the deficiencies noted by the Court.

I.      FACTUAL ALLEGATIONS[1]

The allegations in Rios's Complaint are brief.  She claims that "CYS are lying under oath" and using hearsay against her, as well as "trying to terminate . . . [her] rights without proper counsel."  (Compl. at 3.)  Rios contends that "they are acting out of bad faith due to CYS caseworker not liking" her.  (*Id.*)  According to Rios, "CYS are also acting out of bad faith by recommending service[s] than [sic] using those services against" her.  (*Id.*)

---

[1] The allegations set forth in the Memorandum are taken from Rios's Complaint (ECF No. 2).  The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

Rios requests the Court to "please review this matter and review all the facts" and to assist in having her child returned to her. (*Id.* at 4.) She indicates that a hearing was scheduled for September 30, 2024, but she had no counsel. (*Id.*)

## II.     STANDARD OF REVIEW

The Court grants Rios leave to proceed *in forma pauperis* because it appears that she is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because Rios is proceeding *pro se*, the Court construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other

litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at

*3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the

applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v.*

*Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to

identify any possible claim that the facts alleged could potentially support.").

### III.    DISCUSSION

Although Rios's allegations are undeveloped, it appears that she seeks to assert

constitutional claims pursuant to 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff

must allege the violation of a right secured by the Constitution and laws of the United States, and

must show that the alleged deprivation was committed by a person acting under color of state

law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Local governments and municipalities are

considered persons under § 1983.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658,

690 (1978).  Additionally, in a § 1983 action, the personal involvement of each defendant in the

alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how

each defendant was involved in the events and occurrences giving rise to the claims.  *Rode v.*

*Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Iqbal*, 556 U.S. at 676 ("Because

vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the

Constitution.").

As pled, Rios's Complaint fails to allege a plausible constitutional claim.  To the extent

Rios seeks to assert that her Sixth Amendment rights were violated in the dependency

proceedings because she was not afforded counsel, the claim fails because the Sixth Amendment

does not apply to civil cases. *Turner v. Rogers*, 564 U.S. 431, 441 (2011).[2]  It is possible that

Rios seeks to assert due process claims based on alleged violations of her rights during state

court dependency proceedings.  The Fourteenth Amendment's Due Process Clause "prohibits the

government from interfering in familial relationships unless the government adheres to the

requirements of procedural and substantive due process." *Croft v. Westmoreland Cnty. Children

and Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997).  To state a claim under § 1983 for a

violation of one's procedural due process rights, "a plaintiff must allege that (1) he was deprived

of an individual interest that is encompassed within the Fourteenth Amendment's protection of

'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of

law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).  "The fundamental

requirement of due process is the opportunity to be heard at a meaningful time and in a

meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  The United States

Supreme Court has recognized that there is a "fundamental liberty interest of natural parents in

the care, custody, and management of their child." *Santosky v. Kramer*, 455 U.S. 745, 753

(1982).  However, "this liberty interest in familial integrity is limited by the compelling

governmental interest in the protection of children." *Croft*, 103 F.3d at 1125.

   With respect to a substantive due process claim brought against a child welfare worker,

the United States Court of Appeals for the Third Circuit has explained that,

> a substantive due process claim requires "decision-making by a social worker that is so
> clearly arbitrary . . . [that it] can properly be said to 'shock the conscience.'" [*Miller v.
> City of Philadelphia*, 174 F.3d 368, 376 (3d Cir.1999)]; *see also Croft v. Westmoreland*

---

[2] Pennsylvania law provides parents a right to counsel in dependency hearings. *See In re J.S.*, 980 A.2d 117, 122 (Pa. Super. Ct. 2009); 42 Pa. C.S. § 6337 ("[A] party is entitled to representation by legal counsel at all stages of any proceedings under this chapter and if he is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him.").  Nonetheless, Rios has not explained how the named Defendants deprived her of whatever right to counsel she may have had.

> *Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1124-26 (3d Cir. 1997). In so holding, we observed that "[t]he exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case," because a "higher fault standard is proper when a government official is acting instantaneously and making pressured decisions without the ability to fully consider their risks." *Miller*, 174 F.3d at 375. In such situations, the "standard of culpability" necessary for a child welfare employee's actions to shock the conscience must generally "exceed both negligence and deliberate indifference." *Id.*

*B.S. v. Somerset Cnty.*, 704 F.3d 250, 267-68 (3d Cir. 2013). Thus, to be plausible, a claim related to a social worker removing a child from a parent's custody "requires decision-making by a social worker that is so clearly arbitrary . . . [that it] can properly be said to 'shock the conscience.'" *Id.* at 268. A plaintiff must allege that the government's actions "reach a level of gross negligence or arbitrariness." *Mulholland v. Government Cnty. of Berks, Pa.*, 706 F.3d 227, 241 (3d Cir. 2013).

Here, Rios references a hearing, which suggests that she received some process, but fails to explain how her procedural due process rights were otherwise violated. (Compl. at 4.) Further, she alleges merely that "they" are acting out of bad faith "due to CYS caseworker not liking" her and "by recommending service[s] than [sic] using those services against" her. (*Id.* at 3.) A complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Even under a liberal reading of the Complaint, Rios's allegations simply are far too undeveloped to allege plausibly either a procedural or substantive due process claim against either of the named Defendants. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief.").

## A.    Claims Against Berks County CYS

There are other problems with Rios's Complaint. Rios names Berks County CYS as a Defendant, which is treated as a municipal entity under *Monell*. *See Hatfield v. Berube*, 714 F.

App'x 99, 103 n.1 (3d Cir. 2017) (*per curiam*) (noting "Pennsylvania county offices of children and youth are treated as municipalities for purposes of *Monell*") (citing *Mulholland*, 706 F.3d at 237).  Municipal liability cannot be predicated on a *respondeat superior* basis, meaning that municipalities may not be held liable simply because their employees committed a constitutional violation.  *Monell*, 463 U.S. at 691.  Rather, "under § 1983, local governments are responsible only for 'their *own* illegal acts.'"  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original)).

There are two ways for a § 1983 claim against a municipality to proceed: "[a] plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice."  *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (internal quotations and citations omitted).  "To satisfy the [*Monell*] pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries."  *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id.*  Bald

allegations of the existence of a policy are not enough to establish the county's liability; there must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.  *City of Canton v. Harris*, 489 U.S. 378, 386 (1989).

Therefore, even assuming *arguendo* that Rios plausibly alleged a violation of a constitutional right, to allege a plausible *Monell* claim against CYS, Rios must specify a Berks County policy or custom, and she must allege an affirmative link between the policy or custom and the violation of her rights.  She simply has not done so.  There are no allegations in the Complaint to support a conclusion that Rios's constitutional rights were violated because of a Berks County policy or custom.  *See Mulholland*, 706 F.3d at 237 (affirming dismissal of *Monell* claim for failing to plead that a custom or policy that caused a constitutional violation); *see also Miller v. Off. of Child., Youth & Fams. of Allegheny Cnty.*, 605 F. App'x 99, 102 (3d Cir. 2015) (affirming dismissal of claim against agency because plaintiff failed to allege the deprivation of his rights resulted from any official policy or custom of the agency); *Randolph v. Turgeon*, No. 21-316, 2022 WL 22209559, at *5 (M.D. Pa. May 5, 2022) (dismissing *Monell* claim for failure to plead that a custom or policy infringed on her rights), *report and recommendation adopted*, No. 21-316, 2022 WL 22001377 (M.D. Pa. June 9, 2022).  Accordingly, Rios's claims against CYS will be dismissed.

### B.     Claims Against Rebecca Mill

Additionally, Rios has not stated any basis for a claim against Rebecca Mill.  As the Court noted above, in a § 1983 action the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode*, 845 F.2d at 1207; *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each

Government official, his or her title notwithstanding, is only liable for his or her *own*

misconduct.") (quoting *Iqbal*, 556 U.S. at 677); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir.

2020) ("Personal involvement requires particular 'allegations of personal direction or of actual

knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  Apart from listing Mill in the

caption and list of Defendants, Rios alleges no facts tying Mill to the acts alleged in the

Complaint.  In other words, Rios has not sufficiently explained what Mill did or did not do with

respect to her alleged constitutional harms.  Any claims against Mill will be dismissed.[3]

---

[3] Furthermore, in analyzing the actions of child welfare workers to determine whether a
constitutional violation has occurred, courts will consider whether the child welfare worker is
entitled to immunity for such actions.  In *Ernst v. Child & Youth Servs. of Chester Cnty.*, the
Third Circuit held that child welfare workers "are entitled to absolute immunity for their actions
on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings" and
that this includes "the formulation and presentation of recommendations to the court in the
course of such proceedings."  108 F.3d 486, 495 (3d Cir. 1997).  The Circuit reasoned that:
> the functions performed by [child welfare workers] in dependency proceedings
> are closely analogous to the functions performed by prosecutors in criminal
> proceedings; (2) the public policy considerations that countenance immunity for
> prosecutors are applicable to child welfare workers performing these functions;
> and (3) dependency proceedings incorporate important safeguards that protect
> citizens from unconstitutional actions by child welfare workers.

*Id.*  The *Ernst* court further noted in *dicta* that it would be unwilling to accord absolute immunity
to "investigative or administrative" actions taken by child welfare workers outside the context of
a judicial proceeding.  *Id.* at 497 n.7.  The Third Circuit subsequently clarified that immunity
would apply to investigative actions that are taken as part of an ongoing judicial proceeding for
which the child welfare worker serves as an advocate for the state.  *See B.S.*, 704 F.3d at 269-70.
"The key to the absolute immunity determination is . . . the underlying function that the
investigation serves and the role the caseworker occupies in carrying it out."  *Id.* at 270.
   Actions taken after the initiation of dependency proceedings may also be entitled to
absolute immunity.  *See generally Sporish v. Cnty. of Delaware, Pa.*, No. 12-6363, 2013 WL
5272832, at *8 (E.D. Pa. Sept. 18, 2013) (holding that agency employees who made phone calls
that were arguably outside the dependency proceedings were entitled to immunity for those acts
because the phone calls were made to prepare for dependency hearing); *Lowe v. Lancaster Cnty.
Child. & Youth Soc. Servs.*, No. 20-1413, 2020 WL 7223416, at *8 (E.D. Pa. Dec. 8, 2020)
(holding that caseworkers were absolutely immune on claim that false information was presented
in the petition or at the hearing); *Rodriguez v. Montgomery Cnty. Off. of Child. & Youth*, No. 15-
6186, 2016 WL 2897470, at *4-5 (E.D. Pa. May 17, 2016) (holding that caseworkers were
absolutely immune on claims of making false statements to the Juvenile Court and failing to
follow agency policies and procedures in removing the child from mother's custody because

IV.      **CONCLUSION**

For the foregoing reasons, the Court will grant Rios leave to proceed *in forma pauperis*

and dismiss her Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure

to state a claim.  Cognizant of Rios's *pro se* status, the Court will grant her an opportunity to

develop her allegations by explaining in an amended complaint the "who, what, where, when and

why" of her claims.  *See Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL

5212964, at *4 (D.N.J. Oct. 16, 2019)).[4]

---

alleged conduct "was related to initiating, preparing for, and prosecuting the dependency
proceedings).

[4] This Court has an obligation to abstain from considering certain types of cases pursuant
to the principles of *Younger v. Harris*, 401 U.S. 37 (1971).  "To promote comity between the
national and state governments," the *Younger* abstention doctrine "requires federal courts to
abstain from deciding cases that would interfere with certain ongoing state proceedings."
*Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 461 (3d Cir. 2019) (citing *Sprint
Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77-78 (2013)).  When determining whether *Younger*
abstention is proper, a court first must examine the underlying state court litigation to determine
whether it falls into one of three categories of cases:  (1) criminal prosecutions, (2) civil
enforcement proceedings, and (3) civil proceedings involving orders in furtherance of the state
courts' judicial function.  *See PDX N., Inc. v. Comm'r New Jersey Dep't of Labor & Workforce
Dev.*, 978 F.3d 871, 882 (3d Cir. 2020) (internal quotations omitted).  Child custody proceedings
are civil proceedings that fall within the third category and "are a strong candidate for *Younger*
abstention."  *Mikhail v. Kahn*, 991 F. Supp.2d 596, 626-28 (E.D. Pa. 2014), *aff'd*, 572 F. App'x
68 (3d Cir. 2014) (*per curiam*); *see also Wattie-Bey v. Att'y Gen.'s Off.*, 424 F. App'x 95, 97 (3d
Cir. 2011) (*per curiam*) (affirming application of *Younger* abstention doctrine in child custody
context); *Smith v. Harrison*, No. 21-5120, 2022 WL 445757, at *4 (E.D. Pa. Feb. 14, 2022)
(abstaining under *Younger* from intervening in ongoing child custody proceedings).
      At the second stage, the court must consider three factors articulated by the Supreme
Court in *Middlesex Cty. Ethics Comm. v. Garden State Bar Assoc.*, 475 U.S. 434, 432 (1982),
whether:  (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates
important state interests; and (3) there is an adequate opportunity to raise constitutional
challenges in the state proceeding.  *See Malhan*, 938 F.3d at 462-64.  Because Rios has not pled
any plausible claim, the Court need not address whether *Younger* abstention necessitates that any
claims be stayed pending resolution of the state dependency proceedings.  However, if Rios files
an amended complaint raising nonconclusory claims, the Court will consider at that time whether
the doctrine is applicable.

An appropriate order follows, which contains additional instructions as to amendment.

**BY THE COURT:**

_____
/s/ **Jeffrey L. Schmehl**
**JEFFREY L. SCHMEHL, J.**